No. 20,137.

EDWARD L. EDEN, ET AL., *v.* SOUTHERN COLORADO
MIDGET RACING, INC.
(384 P. [2d] 732)

Decided August 26, 1963.

Messrs. PHELPS, FONDA and HAYS, for plaintiffs in error.

Mr. CHARLES F. KEEN, Mr. THOMAS E. JAGGER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

THE parties appear here in the same order as in the trial court. We refer to them as the plaintiffs and the defendant.

On May 20, 1947, plaintiff Edward L. Eden, as lessor, and defendant, as lessee, entered into a written lease covering a tract of unimproved lands located near Pueblo, containing 18.36 acres, which lease among other things provided:

" * * * lessor * * * has leased the following described premises * * * to be used and occupied as a racing course for the racing of miniture [sic] or midget automobiles, together with racing track, fences, grandstands, lavatories, refreshment rooms, eating places, parking lot and other conveniences and facilities in connection therewith * * * [Here follows a metes and bounds description of the premises].

"TO HAVE AND TO HOLD the same * * * for so long a period as the lessee, or its successors and assigns, shall conduct and operate a racing course for the racing of miniture [sic] or midget automobiles thereon, at and for a rental, for the full term aforesaid of Three Thousand Five Hundred and No/100 Dollars ($3,500.00), for which rental lessor agrees to and does hereby accept thirty-five (35) shares of the capital stock of said lessee corporation to be fully participating in the earnings of said lessee corporation, receipt whereof is hereby acknowledged, together with one-seventh (1/7) of the net proceeds realized from the sale thereof in the event of the sale of its said business and assets by said lessee.

* * *

"Lessee agrees not to engage in or permit any unlawful business on said premises, and to pay and discharge all taxes, assessments, and other charges levied or imposed on said premises during said term as soon as the [sic] become due and payable."

At all times since May 20, 1947, the defendant has

been and at the time of trial, November 1960, was in possession of the leased premises.

On June 27, 1958, plaintiffs notified defendant that they " * * * consider the lease * * * as void," and that they desired to retake possession of the property. Numerous reasons were set forth as to why they considered the lease as void. All reasons set forth, except one, have now been abandoned. The one reason now urged as to why the lease is void is:

"The property is not being used for the racing of miniature or midget automobiles in accordance with the terms of the Lease."

The defendant refused to vacate the property.

On October 11, 1958, plaintiffs caused to be served on defendant: " * * * notice upon you to vacate * * * within three (3) days from the service of this notice upon you in accordance with the terms of the lease * * * ."

Defendant did not vacate, whereupon plaintiffs commenced this action and filed their amended complaint on November 24, 1958, wherein plaintiffs charge the defendant with the unlawful detention of the leased premises.

The defendant answered, setting forth that it had fully complied with all of the terms of the lease and alleged that its possession is lawful and that the lease is in full force and effect.

Trial was to the court. The trial court made extensive findings of fact and conclusions of law and entered judgment dismissing plaintiffs' complaint.

Plaintiffs are here by writ of error seeking reversal.

■ Pertinent portions of the FINDINGS OF FACTS AND CONCLUSIONS OF LAW are:

"4. That at the time of the execution of the Lease and shortly thereafter Defendant Corporation errected [sic] it's physical plant upon the leased premises and did expend on it's construction the approximate sum of Fifty Thousand Dollars and no/100 ($50,000.00) and did, during the year 1947 and subsequent years, conduct

and operate a racing course upon the leased premises * * * .

* * *

"6. That the Defendant Corporation paid to the Plaintiffs under the terms of the Lease the following: $3,500.00 in Stock, 35 shares of capital stock in Defendant Corporation at the par value of $100.00 per share; money in the form of dividends in the approximate sum of $2,500.00; payment of property taxes upon the leased premises together with special improvements assessed against the leased premises for the taxable years 1947 to 1959; both inclusive.

* * *

"8. That the leased premises were originally purchased by Plaintiffs for the approximate sum of $720.00 and that the Plaintiffs have received from Defendant Corporation the amounts and sums above stated.

* * *

"10. That the Plaintiffs have continuously demanded and always received performance from the Defendant Corporation of it's duties under the Lease and have requested and received the payment of the general taxes levied against the leased premises from 1947 to 1958 both inclusive and since the commencement of this action for the years 1958 and 1959.

"11. That the Defendant Corporation has conducted and operated a racing course upon the leased premises during the entire racing season of each year from the year 1947, and did race thereon only stock cars during the year 1951 and 1952, all of which Plaintiffs knew and had notice of.

"12. That the Lease Agreement was entered into for the purpose of operating and conducting a racing course upon the leased premises for the mutual profit of both parties and that the Plaintiff, Edward L. Eden, contributed to this venture the land and in return received from Defendant Corporation 35 shares of stock, which shares were to be fully participating in the earnings of

the Defendant Corporation together with a right to one-seventh (1/7) of the net proceeds realized from any sale of the corporate business and assets.

\* \* \*

"The failure of Defendant Corporation to race midget or miniature automobiles upon the leased premises does not end the term of the Lease nor does it give the Plaintiffs the right to terminate the Lease for the following reasons:

"A. That the basic purpose of the Lease Agreement was to conduct and operate upon the leased premises for the mutual profit of the parties thereto a racing course and that Defendant Corporation has since the date of the Lease operated upon the leased premises a racing course each and every racing season.

"B. That the provisions in the Lease authorizing the use of the premises for 'so long as the Lessee . . . shall conduct and operate a racing course for the racing of miniature or midget automobiles thereon,' is a permissive rather than a restrictive use of the premises and does not restrict or limit the use of the premises to the racing of miniature or midget automobiles nor impliedly forbid the racing of stock-cars thereon.

"C. That the racing of stock-cars upon the demised premises is not a substantial non-compliance with the use anticipated and intended so as to end the term of the Lease or give the Plaintiffs the right to terminate the Lease.

"D. That the Plaintiffs, having accepted the benefits paid by the Defendant Corporation and having demanded and received payment of the taxes prior to and after the commencement of this action with knowledge and notice of the use to which the leased premises had been put, have waived their right, if any, to assert a breach or to terminate the lease. \* \* \* ."

The above FINDINGS are amply supported by the evidence.

In addition to the foregoing FINDINGS, the record

shows, and without contradiction, that the plaintiff Edward L. Eden and his son, Edward L. Eden, Jr., were two of six persons who, in 1946, incorporated the defendant. At the time of the incorporation the incorporators contemplated and had in mind use of the leased premises, and the incorporation and lease were a part of the overall purpose of constructing a racing course and conducting automobile races for profit. Plaintiff Edward L. Eden has at all times been and is a stockholder of defendant and was for a period of time one of its directors. At the time of the trial one of his sons and a son-in-law were stockholders. Edens, through their stock ownership and active participation in the affairs of the defendant, have at all times had an interest in the lease, both as lessor and lessee.

Among the objects of the corporation are:

"To conduct and operate a racing course for the racing of miniture [sic] or midget automobiles * * * ."

           *    *    *

" * * * to do all and singular the things provided in the laws of the State of Colorado under which this corporation is authorized to do business."

The record further shows that the defendant has at all times maintained a racing course suitable for the racing of midget automobiles on the leased premises, and during each year, 1947-1959 inclusive, has conducted at least one midget car race on the leased premises.

The record further shows, without contradiction, that two or three years after execution of the lease midget car racing in Colorado lost its lure. Spectator interest diminished and it became very difficult, and often impossible, to procure midgets or their drivers to participate. However, as midget racing lost its lure stock car racing became more popular, stock cars and drivers were available for such races, and the defendant shifted from midgets to stock cars for most races and profited handsomely by the shift, and through this shift from midget to stock car races defendant's business prospered

and plaintiffs, as major stockholders of defendant, shared in defendant's earnings and accepted dividends produced by stock car races. For eight or more years plaintiffs did not protest the shift from midget to stock cars. There is no difference between a midget racing car and a stock racing car, except in the body of such vehicles — motors and chassis are the same. A track is equally suitable for both kinds of cars and the racing thereof. The same persons drive midgets or stock cars.

During all of the period of the lease, plaintiffs as record owners had paid the taxes on the leased premises as they became due and had sought and obtained from the defendant prompt reimbursement thereof. Even after commencement of this action plaintiffs paid the 1958 taxes and demanded and received reimbursement thereof on March 31, 1959. Again on February 29, 1960, plaintiffs notified defendant that they had paid the 1959 taxes in the amount of $205.34 and demanded and received reimbursement.

Pursuant to the terms of the lease defendant in 1953 or 1954 paid a paving assessment of $1000.00 against the property.

Plaintiffs also received dividends on their stock in the total amount of $2166.40 — the last payment being received June 15, 1960, some one and one-half years after the commencement of this action.

Defendant, at request of the plaintiffs and in order to enable one of their sons to complete the sale of some adjacent property, released a thirty-one foot wide strip off of the north end of the leased property.

The lease in question was prepared by plaintiffs' then attorney, and all doubts as to its meaning must be construed against the plaintiffs.

Plaintiffs contend that the lease automatically terminated on failure of the defendant to race midgets for one season. Certainly plaintiffs did not so construe the lease. They have received dividends, demanded and received rental in the way of taxes, have received rental

of $1000.00 by payment of special improvement taxes, and have requested and obtained from defendant release of a portion of the leased premises. Such conduct is at variance with their contention that during all of those years there was no lease.

If the only thing the defendant could use the property for was to race midgets, then the provision in the lease that the property should not be used for any unlawful business is rendered meaningless.

In 51 C.J.S., Landlord and Tenant, 536, § 29, it is stated: " * * * Leases of doubtful duration must be construed favorably to the tenant; and the lessor may by his conduct estop himself to assert that the lease has expired."

In *Grundstein v. Suburban Motor Freight,* 92 Ohio App. 181, 107 N.E. (2d) 366, the term of the lease was "for a term of the duration of the present war [World War II] and six (6) months thereafter beginning October 1, 1942." There, the court held that cessation of hostilities on August 14, 1945, was not the end of the war, and that the term of the lease did not expire until six months after there has been a formal declaration of peace between the belligerent nations.

There, as here, the lessor sought and demanded performance by the lessee during the period after he claims the lease had expired. In disposing of this contention the court said:

" * * * Furthermore, it is a well established principle of law that where words are susceptible of more than one meaning, the courts will adopt that interpretation which the parties themselves have placed upon them by their subsequent acts. Courtright v. Seringer, 110 Ohio St. 547, 144 N.E. 294; City of Cincinnati v. Gas Light & Coke Co., 53 Ohio St. 278, 41 N.E. 239; Fagan v. Ulrich, 1915, 166 App. Div. 342, 152 N.Y.S. 37. In the application of this principle of law it is well to observe that over eighteen months after February 14, 1946, the date on which the plaintiff claims the lease terminated, the lessors in a letter to the defendant-company recognized the

validity of the lease and that it still was in effect by requesting the defendant-company to do some work and stated: 'This is your responsibility as outlined in our contract. We are sure you see the value of having the needed work finished before the winter months arrive.' Also, in the assignment of the lease, dated October 28, 1947, the lessors considered the lease still in effect."

The judgment is affirmed.

Mr. Justice Sutton and Mr. Justice Day concur.