741 P.2d 1364

**Levon REGISTER and Elmaise T. Register, Plaintiffs-Appellees,**

v.

**ROBERSON CONSTRUCTION COMPANY, INC., Defendant-Appellant.**

No. 16723.

Supreme Court of New Mexico.

Aug. 19, 1987.

Rehearing Denied Sept. 15, 1987.

Paul A. Phillips, Albuquerque, for defendant-appellant.

Freedman, Boyd & Daniels, David A. Freedman, Albuquerque, for plaintiffs-appellees.

## OPINION

SOSA, Senior Justice.

Defendant-Appellant, Roberson Construction Co., Inc. (Roberson) appeals from the judgment granted to plaintiffs-appellees, Levon and Elmaise Register (the Registers). The cause of action had been initiated by ten plaintiffs, including the Registers, against four defendants. Eventually a settlement removed all parties from the case except the parties to this appeal. After a trial without jury on a seven-count complaint which, for purposes of this appeal may be considered an action for fraud, the trial court entered judgment in favor of the Registers. We affirm.

### FACTS

In April 1979, Roberson began to subdivide certain property which it owned in Albuquerque, known as the Carson-Grande Addition, for the purpose of building and selling residential townhomes. Roberson's intention was to establish seventy such homes in the subdivision, but by 1980 only ten units had been completed, and several residents, who eventually became plaintiffs in the action against Roberson and the other defendants, were beginning to express doubt that Roberson had the intention of completing the subdivision as promised.

In accordance with NMSA 1978, Sections 47–7–1 through 47–7–28 (Repl.Pamp.1982), the "Building Unit Ownership Act," and pursuant to Section 47–7–11, Roberson prepared a "Declaration of Covenants, Conditions, and Restrictions Relative to Carson-Grande Addition." Among other stipulations the declaration stated:

[1] The areas designated on the plan as 'pool' and the areas shown adjacent to the lots are designated common areas * * *.

[2] Every person or entity who is a record owner of a fee * * * interest in any living unit will be a member of Carson-Grande Homeowners Association***.

[3] Builder will transfer the Common Areas to the Association, free from encumbrances, not later than July 1, 1984 * * *.

[4] The provisions of the Declaration are 'covenants running with the land,' will run with and bind the land, and will bind, inure to the benefit of, and be enforceable by, the Association, or any member, and their respective legal representatives * * * for a term of twenty (20) years from the date this Declaration is recorded * * *.

In spite of the four stipulations set forth above, Roberson never constructed a pool; never activated the homeowners association; did not transfer the common areas to the association, and amended the declaration so as to eliminate the planned construction of a pool.

In August 1981, the Registers (husband and wife) came from out of state and began looking for a home to purchase in Albuquerque. In September 1981, prior to purchasing a home in the subdivision, the Registers were given a Roberson brochure by a Roberson sales representative. Portions of the brochure provided, "In the spirit of Old Town, the essence of the comfortable Southwestern lifestyle has been captured in Villa De Los Castillos [the name given to the subdivision].... Villa De Los Castillos—the perfect marriage of traditional beauty and contemporary comfort. To live at the Villas is to truly understand the meaning of living the comforta-

ble life." Included in the brochure was a site plan showing some sixty-nine numbered units, a pool complex which appears roughly five times the size of each living unit, and a large area designated "future art gallery."

The Registers testified at trial that Roberson's sales agent told them that the pool would be completed; that it would be a large, Olympic-sized pool; that Mrs. Register testified that the pool was a crucial item in her decision to buy the house because of her arthritic condition; that the agent further told the Registers that the subdivision would be completed according to the general description on the site plan; that a security wall would be completed and security services provided; and that only well-established persons would be interested in purchasing homes in Villa De Los Castillos, owing to the superior construction of the homes and the various amenities to be provided. Another agent of Roberson told the Registers that when the subdivision was completed according to plan, their house (purchased for $131,000) would likely have a value of $250,000. Finally, Roberson's agents told the Registers that no homes would be built in the subdivision of a lesser quality or price, so that the exclusivity of the environment and the socio-economic status of the owners would be preserved.

In actuality, none of the promises made to the Registers were realized. The pool was never built and grading was never done, with the result that large "ponds" of rainwater collected in the yards of the homes. Further, rainwater leaked though the Registers' roof, ruining their carpet. Insulation was not installed—at least not until the Registers threatened to contact federal officials. Two weight-bearing beams in their home showed cracks; weeds collected in the subdivision and were not cut down; the subdivision became a gathering place for people who sat in their cars, drank alcoholic beverages, and threw their refuse into the uncompleted area of the subdivision; a woman was beaten; people crossed over the Registers' property; and two years after the Registers moved in, during which time Roberson had not completed any further units, Roberson sold the subdivision to another company, which proceeded to offer homes for sale advertised in the local newspaper, "From $72,900."

**The Issue of Fraud**

■ We conclude that the testimony at trial, the depositions on file, and the exhibits of record, especially the photographic and artistic exhibits, are sufficient to support the trial court's findings of fact and conclusions of law establishing a pattern of commission and omission amounting to fraud. Insofar as omission is concerned, the trial court found that the following information was withheld from the Registers: Roberson did not have sufficient funds to complete the project as promised; at the time of sale Roberson had no intention of completing the project as promised; Roberson had no intention of building the promised swimming pool, and there was no significant resale market for the home purchased by the Registers. Generally speaking, the court's findings of fact are perhaps best summarized by a statement made by Mrs. Register during her deposition testimony: "We purchased a lifestyle that was serene, quiet. We didn't get that. We got a slum that was totally abandoned by the builder."

■ Scrutiny of the photographic exhibits substantiates Mrs. Register's testimony. Yet, our conclusions concerning the facts of this case are not based on an original and independent analysis of the record. Rather, we take the trial court's findings of fact as binding because that is our duty on appeal. *Tafoya v. Casa Vieja, Inc.,* 104 N.M. 775, 727 P.2d 83 (Ct.App.1986); *Duke City Lumber Co. v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975). Roberson argues that the findings of fact are not borne out by substantial evidence and urges us to ignore them. We disagree. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ruidoso State Bank v. Castle,*

105 N.M. 158, 730 P.2d 461 (1986); *Toltec Int'l., Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186, (1980). There is ample evidence in the record before us to support the factual conclusions reached by the trial court.

■ Roberson next argues that the court below did not enter conclusions of law sufficient to establish the elements of the tort of fraud. The classic definition of actionable fraud has been stated often as "a misrepresentation of a fact, known to be untrue by the maker, and made with an intent to deceive and to induce the other party to act upon it with the other party relying upon it to his injury or detriment." *Unser v. Unser*, 86 N.M. 648, 653–54, 526 P.2d 790, 795–96 (1974). While it is true that the trial court in its conclusions of law did not list these elements in order, and did not specify which facts are related to each of the elements, the court nonetheless defined a general nexus between the findings of fact and conclusions of law sufficient to establish the tort of fraud.

■ Roberson further argues that there is nothing in the findings which establishes the requisite intent to deceive, suggesting perhaps that the Registers' theory of recovery should have been based on breach of warranty or similar action, rather than on the tort of fraud. While it is true that an action for fraud will ordinarily not lie as to a pattern of conduct based on promises that future events will take place, there are nonetheless the following well-established exceptions to this rule, all of which are pertinent here, notably, where the promises are based on contrary facts peculiarly within the promisor's knowledge, *see Eade v. Reich*, 120 Cal.App. 32, 7 P.2d 1043 (1932), or where the promise is based on a concealment of known facts, *see Patterson v. Western Loan & Bldg. Co.*, 155 Or. 140, 62 P.2d 946 (1936). Further, if the promise as to future events is part of an overall pattern designed to lead a party to act to his/her detriment, and in such a way as harmfully to alter a legal right possessed by the party, then promises as to future actions will support an action for fraud, *See Cockrill v. Hall*, 65 Cal. 326, 4 P. 33 (1884), especially in a situation where the defendant states an opinion or belief as to future occurrences which are shown to have had no support by the facts at the time the opinions or beliefs were given. *See White v. Financial Guar. Corp.*, 13 Cal.App.2d 93, 56 P.2d 550 (1936). *See also* our own statement as to this issue in *Telman v. Galles*, 41 N.M. 56, 63 P.2d 1049 (1936).

**Damages**

■ Roberson contends that rescission is not a proper remedy because the Registers did not tender their home to Roberson prior to filing this complaint. While ordinarily a tender of the consideration paid is necessary before one can seek a rescission of the contract, here a tender would have been meaningless since it was obvious that Roberson lacked the financial resources to effectuate a repurchase. Further, the Registers had burdened their home with a substantial mortgage, making a tender of the property to Roberson virtually impossible under the circumstances. The trial court properly adjusted the equities between the parties in its final decree. *See Woods v. City of Hobbs*, 75 N.M. 588, 408 P.2d 508 (1965).

The court computed damages by crediting to the Registers the down payment made on the house at closing, plus the monthly mortgage payments they had made from closing to date of judgment, less the fair rental value of the home for the same period of time. As to the period after judgment, the court added, "Registers deed townhome to Roberson, which assumes mortgage or pays off mortgage. Roberson can sell townhome to recoup all or part of damages."

■ Ordinarily, in fraud cases such as this, we have followed the benefit-of-the-bargain rule with respect to damages, in which the defrauded party may recover the

difference between the actual and represented values of the property purchased. *Stewart v. Potter*, 44 N.M. 460, 104 P.2d 736 (1940) *Industrial Supply Co. v. Goen*, 58 N.M. 738, 276 P.2d 509 (1954). Here, however, while the trial court found the actual value of the Registers' home to be $125,000, the court did not determine what the represented value was. The court relied instead on our more general statement of the measure of damages by which defrauded purchasers are "entitled to recover such damages as are the direct and natural consequence of their acting in reliance upon [the false representations]." *Industrial Supply Co. v. Goen. Id.* at 743, 276 P.2d at 512. The trial court thus computed the damages accurately, for the direct and natural consequence of the Registers relying on Roberson's fraudulent misrepresentations amounted to the Registers losing the down payment they had made, plus their mortgage payments, less the rental value of their house.

Accordingly, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

STOWERS and RANSOM, JJ., concur.