**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAR 9 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

In re:

LAURA L. CARPENTER and
LAURA CARPENTER FINE ART, INC.,

      Debtors.

---

LAURA L. CARPENTER and
LAURA CARPENTER FINE ART, INC.,

      Plaintiffs-Appellants
      and Cross-Appellees,

v.

GINNY L. WILLIAMS,

      Defendant-Appellee
      and Cross-Appellant.

Nos. 98-2288
98-2296
98-2300

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**Consolidated into D.C. No. CIV-97-1197-BB/LCS**

---

Spencer Reid, Keleher & McLeod, Albuquerque, New Mexico (Thomas C. Bird and James C. Jacobsen of the same firm with him on the briefs), for Trustee of the Estate of Laura L. Carpenter.

Robert A. Johnson, Eastham, Johnson, Monnheimer & Jontz, P.C., Albuquerque, New Mexico (Karla K. Poe of the same firm with him on the briefs) for Laura Carpenter Fine Art, Inc.

J. Lawrence Hamil, Hamil Professional Corporation, Denver, Colorado (Gail Gottlieb of Sutin, Thayer & Browne, P.C., Albuquerque, New Mexico, with him on the briefs) for Ginny L. Williams.

Before **BRISCOE** and **McKAY**, Circuit Judges, and **BROWN**, Senior District Judge.[*]

---

**BROWN**, District Judge.

---

[*] The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

These appeals arise out of a bankruptcy proceeding involving two debtors, Laura L. Carpenter and Laura Carpenter Fine Art, Inc. ("LCFA"). Carpenter, through LCFA, owned and operated an art gallery in Sante Fe, New Mexico. In 1991, she met Ginny Williams, a wealthy Denver art dealer and collector. In 1992, Carpenter approached Williams about obtaining financing for the LCFA gallery. Over the next two-and-a-half years, Williams and Carpenter became close friends, and Williams advanced large sums of money to Carpenter and LCFA. In 1994, the friendship deteriorated, and the parties became involved in litigation. Carpenter and LCFA filed for Chapter 11 relief in November of 1995.[1] In an adversary proceeding in bankruptcy, Williams filed various claims against the debtors, and the debtors asserted various counterclaims. After a ten-day trial, the bankruptcy court filed extensive findings of fact and conclusions of law and entered judgment accordingly. There followed an appeal to the district court, which ruled on the parties' objections after referral of the case to a magistrate judge for a report and recommendation. Each of the parties now appeals several aspects of the district court's judgment.

We see no need to restate the extensive findings of the bankruptcy court or to detail the alterations in the bankruptcy court's ruling embodied in the district court judgment. Nor do we

---

[1] Williams' Motion for Judicial Notice of Chapter 7 Conversions and to Supplement the Record is hereby GRANTED. Williams' supplemental filing indicates that both bankruptcy cases have now been converted to Chapter 7 actions.

think it necessary to reiterate in full the arguments raised by the parties in their briefs.  The lower courts have discussed the issues extensively, and, having examined the record in light of the parties' arguments, we now conclude that the judgment of the district court should be affirmed, largely for the reasons stated in the extensive opinions of the lower courts.  We find it necessary to address specifically only a few of the more significant issues on appeal.

I. <u>Discussion</u>.

A. <u>Art Investment Agreement</u>.  Among other issues, Williams objects to the bankruptcy court's finding that she and Carpenter had an enforceable agreement to purchase works of art and to resell them at a mutually agreeable time, with the profits to be split evenly after reimbursement to Williams for expenses.  Williams contends that this alleged agreement, which was the subject of a written document executed by the parties on April 7, 1994, was unenforceable because there was no "meeting of the minds" as to the essential terms of the contract.  We agree with the bankruptcy court that "[a]bundant evidence supports the existence of this agreement, including the performance of its fundamental terms by both parties." <u>Aple. App.</u> at 213.  In addition to the  written document itself, the parties' actions both before and after execution of the document indicated that they had in fact reached a mutual understanding sufficient to constitute a binding

3

agreement. The courts below explained in detail the facts and law supporting this conclusion and also set forth the essential terms of the agreement as shown by the evidence, including the works of art subject to the agreement, the manner of determining the profits to be shared, and the implied obligation to act in good faith in performing the contract. See Aple. App. at 213-22; 380-85. We see no error in these rulings and affirm for the reasons stated by the lower courts.

In connection with her argument that the art investment agreement failed to set forth essential terms, Williams points out that an agreement to share losses, as well as profits, is an essential element of a joint venture. See Fullerton v. Kaune, 72 N.M. 201, 204, 382 P.2d 529, 532 (1963). Because the parties here only agreed to split profits and said nothing about dividing losses, Williams contends the bankruptcy court erred in finding the existence of a joint venture. Sharing "loss" in a joint venture, however, does not necessarily mean only monetary loss. Numerous courts have held that the "loss" requirement is satisfied where an agreement calls for one party to expend time and out-of-pocket expense on the venture such that a failure to obtain a profit would render that party's efforts for naught. See e.g. Summers v. Hoffman, 341 Mich. 686, 69 N.W.2d 198 (1955). As LCFA points out, the New Mexico Court of Appeals recently took a similar view in Lightsey v. Marshall, ___ P.2d, ___, 1999-NMCA-147, 1999 WL 1103254

4

(N.M. App., Oct. 5, 1999), where it found that a party to a joint venture to sell property would have shared in losses if the property were not sold at a profit because he had "contributed significant time, effort, and materials" toward the property. 1999 WL 1103254, *3. As shown by the findings of the bankruptcy court in this case, the art investment agreement required an expenditure of time, effort and expense on the part of LCFA. Under these circumstances, a finding that the parties agreed to engage in a joint venture is supported by the evidence.

We likewise find no error in the bankruptcy court's determination that Williams breached the art investment agreement by repudiating it. Repudiation is established where one party, through words or acts, evinces a "distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement." Gilmore v. Duderstadt, 125 N.M. 330, 334, 961 P.2d 175, 179 (Ct. App. 1998). There is evidence in the record to support a finding of repudiation, including Williams' letter of December 10, 1994, stating (contrary to the agreement) that "I intend to recall whatever art I want to Denver, when I want to do so ..... and to sell it as I see fit" and that "'[b]argaining' is not a consideration." Aplt. Supp. App. at 607. Nor do we find any clear error in the determination that Carpenter's actions did not provide a legal excuse for Williams' failure to perform the agreement. See Id. at 387-89. The magistrate judge explained why

5

Carpenter's breaches of the agreement, when considered in light of the agreement as a whole, were not material, and we see nothing to suggest that the court's determination is inconsistent with the standards for determining when a breach is material. See Famiglietta v. Ivie-Miller Enterprises, Inc., 126 N.M. 69, 74, 966 P.2d 777, 782 (Ct. App. 1998). Finally, the bankruptcy court's determination that the art investment agreement should be specifically performed was not an abuse of discretion under the circumstances of this case. Cf. Navajo Academy, Inc. v. Navajo United Methodist Mission School, Inc., 109 N.M. 324, 330, 785 P.2d 235, 241 (1990) (grant of equitable relief reviewed for abuse of discretion). The bankruptcy court's conclusion that there was no adequate remedy at law for Williams' breach was implicit in its findings, and we therefore affirm the decree for the reasons stated by the district court in its opinion.[2]

B. The Gallery Document (or "Working Capital Agreement"). A second area of dispute concerns whether Williams breached an

---

[2] Williams' response brief argues the bankruptcy court's decree of specific performance should be vacated due to the subsequent conversion of the LCFA bankruptcy to Chapter 7. Williams' Resp. Br. at 58-61. We see no reason why the mere fact of conversion would require reversal of the bankruptcy court's determination. Any argument that the conversion frustrates the purpose of the decree or makes it inequitable is entirely speculative at this point. If some inequity arises in the future, we note that the rules permit parties to seek relief in the district court. See Fed.R.Civ.P. 60(b)(5) (upon motion, the court may relieve a party from a final judgment if it is no longer equitable that the judgment should have prospective application). In view of our ruling on this point, Carpenter's Motion to Strike pages 58-61 of Williams' response brief is DENIED as moot.

alleged contractual obligation to provide "ongoing financial support for LCFA as necessary" pursuant to another document signed by the parties on April 7, 1994. The bankruptcy court rejected LCFA's argument that this document represented a binding contract, finding that "[t]he gallery document fails to set forth essential terms, contains terms too indefinite to enforce, and provides inadequate consideration to Williams." Aple. App. at 209. LCFA now contends that these findings were erroneous. After reviewing the record, we agree with Williams that LCFA has waived its right to challenge the judgment of the district court on this issue. When the bankruptcy appeal was referred to the magistrate judge, he recommended that the bankruptcy court be affirmed as to its finding that the "working capital agreement" was unenforceable. Id. at 390-94. Although the magistrate indicated that he thought the terms of the purported contract were definite enough to enforce, he stated that the bankruptcy court's finding that the agreement was unenforceable for lack of consideration was correct and should be affirmed. Id. at 393. LCFA filed no objections to the magistrate judge's report and recommendation. The report specifically informed the parties that they had ten days to file objections to the recommendations if they wanted to have appellate review and that "[i]f no objections are filed, no appellate review will be allowed." Id. at 368.

"This court has adopted a 'firm waiver rule' which provides

7

that a litigant's failure to file timely objections to a magistrate's [report and recommendation] waives appellate review of both factual and legal determinations." Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). LCFA argues that we should forego application of this rule in cases involving bankruptcy appeals, but its arguments for doing so are wholly unpersuasive. This court has held that referral of a bankruptcy appeal to a magistrate for an advisory opinion is permissible. See Hall v. Vance, 887 F.2d 1041, 1046 (10th Cir. 1989). The purpose of making such a referral is to "define and focus the issues on appeal." See Griego v. Padilla (In re Griego), 64 F.3d 580, 583, n.4 (10th Cir. 1995). In the instant case, failure to apply the waiver rule would utterly defeat that purpose and would permit LCFA to circumvent review by the district court, inasmuch as the absence of any objection by LCFA undoubtedly led the district court to conclude that inadequacy of consideration was no longer an issue on appeal and that there was no need for review of that issue in its opinion. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985) (the waiver rule "prevents a litigant from 'sand-bagging' the district judge by failing to object and then appealing."). We fail to see how applying the waiver rule in this case would, as LCFA contends, "trivialize the Bankruptcy Court's work." Cf. LCFA Br. at 4. Under LCFA's view, a party could simply ignore a magistrate's report and recommendation and then, on appeal, contest matters that the

8

district court regarded as unchallenged. We reject that view. The language in the report and recommendation informing counsel and the parties in this case of the consequences of not filing objections was clear enough. In sum, the interests of justice do not require that we forego the waiver rule, and we conclude that it bars LCFA's attempt to resurrect an issue on appeal that it did not properly raise before the district court. For that reason, we affirm the lower courts' conclusion that the working capital agreement was not an enforceable contract.

C. <u>Williams' Claim for Funds Loaned to LCFA</u>. The bankruptcy court determined that approximately $1.5 million advanced by Williams to LCFA after November 4, 1993, constituted loans to the corporation rather than capital contributions. The district court subsequently found that Williams was also entitled to interest on these loans. LCFA now argues that these findings must be reversed because there is an internal inconsistency in the bankruptcy court's findings. Specifically, LCFA points to a statement by the court that these advances "were clearly being made in anticipation of [Williams'] expected participation in the business and not as interest earning investments." <u>Aple. App.</u> at 212. LCFA relies on this statement to suggest that the bankruptcy court actually found that the funds were paid-in equity. It further contends the court erroneously "transmuted" the equity into loans when it declared that the funds "should be treated as loans...." <u>LCFA Br</u>. at 14.

9

It is only by ignoring the context of these findings that LCFA can advance such an argument. The bankruptcy court recounted the abundant evidence before it showing that the parties had regarded these advances as loans -- including evidence that the advances were initially entered as "notes payable" on LCFA's books, that Williams treated the advances as loans for tax purposes, that no commensurate shares of stock were issued, that two of the checks advancing some $650,000 stated on their face they were loans, and that after the demise of the parties' relationship Carpenter directed her bookkeeper to reclassify the entries from "notes payable" to "paid-in equity" -- and the court concluded that the advances "should be treated as loans and constitute a valid claim against the estate of LCFA." Aple. App. at 211. In an attempt to turn the plain meaning of this conclusion upside-down, LCFA suggests that saying the advances "should be treated as loans" implicitly means the court found they were not loans. We reject this attempt to inject an ambiguity where none exists. The bankruptcy court's obvious meaning was that, as between loans or equity, the advances were properly characterized as loans. The court most certainly did not find, as LCFA suggests it did, that "the advances were made not as loans, but as equity." Cf. LCFA Br. at 14. As for the court's finding that the advances were "made in anticipation of [Williams'] participation in the business and not as interest-earning investments," that fact was cited by the

10

bankruptcy court in a separate paragraph in support of its finding that Williams was "entitled to no interest on the money loaned to LCFA" because "[n]o evidence supports the proposition that the parties had an agreement with respect to interest." Aple App. at 212. This is in no way inconsistent with the court's conclusion that the funds advanced by Williams constituted loans. The magistrate judge and district judge subsequently explained why New Mexico law permitted Williams to recover interest on these loans notwithstanding the lack of a specific agreement about interest, and LCFA has not challenged those rulings. In sum, we affirm the district court judgment in favor of Williams with respect to the funds advanced after November 4, 1993.

D. Other Issues. We have examined the other arguments raised in the briefs and conclude they are without merit.

II. Conclusion.

The judgment of the district court is AFFIRMED.

11