**Certiorari Denied, No. 31,987, November 4, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-131**

**Filing Date:  August 10, 2009**

**Docket No. 28,367**

**JEFFREY P. BRANCH,**

**Plaintiff-Appellant,**

**v.**

**CHAMISA DEVELOPMENT CORPORATION, LTD.;
PLAZA SANTA FE II, LLC; PLAZA SANTA FE II
MANAGER, INC.; MID-WEST ACQUISITIONS, INC.;
DELMAR REALTY INVESTORS, INC.; JD INVESTORS,
LLC; NM REALTY HOLDINGS, LLC a/k/a NEW MEXICO
REALTY HOLDINGS, LLC; DEMETRIOS DELLAPORTAS;
PETER DELLAPORTAS; and STATEWIDE INVESTMENTS,
LLC,**

**Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
James A. Hall, District Judge**

Scheuer, Yost & Patterson
Donald A. Walcott
Kristofer C. Knutson
Santa Fe, NM

for Appellant

Simons & Slattery, LLP
Thomas A. Simons, IV
Faith Kalman Reyes
Santa Fe, NM

for Appellees

1

**OPINION**

**VANZI, Judge.**

**{1}** Plaintiff, Jeffrey Branch, appeals from the dismissal of his claims against Defendant, Chamisa Development Corporation, Ltd. (Chamisa), for breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, negligent nondisclosure, recission, and breach of contract. We affirm.

**I.    BACKGROUND**

**Early Stages of the Business Relationship**

**{2}** This matter arises out of a dispute concerning the development of Plaza Santa Fe, a shopping mall in Santa Fe, New Mexico. Branch has been doing business as a licensed real estate broker since 1985 and has extensive experience in commercial real estate. Chamisa is a limited liability corporation based in the state of Illinois and was the developer responsible for the Plaza Santa Fe project. Chamisa and Branch's business relationship began in 1993 when Chamisa approached Branch to assist in the development of Plaza Santa Fe. Branch's duties included brokering the leases for the development, obtaining the required permits for the development from the City of Santa Fe, and briefly acting as property manager and soliciting commercial tenants to occupy the commercial space.

**{3}** On July 17, 1996, Branch and Chamisa entered into the first of two agreements that lie at the core of this dispute. This first agreement (1996 Agreement) gave Branch certain monetary entitlements to the development. Under the 1996 Agreement, Branch was entitled to receive an "[e]quity [i]nterest" in Plaza Santa Fe, which was comprised of a ten percent equity stake, a ten percent interest in net operating income (NOI) (which is defined in the 1996 Agreement as rent accrued from the development minus all operating expenses), and ten percent of all net sales proceeds from the sale of Plaza Santa Fe. The 1996 Agreement included a provision, which states that "[n]othing contained in the NOI to be received by [Branch] shall be deemed to constitute [Branch] a partner of, or joint venturer with, [Chamisa] or its affiliates."

**Deterioration of the Business Relationship**

**{4}** Between July 1999 and January 2004, Branch and Chamisa's business relationship deteriorated significantly. The parties offer differing accounts as to why this occurred.

**{5}** Branch contends that Chamisa was violating the 1996 Agreement. From the date the 1996 Agreement was signed until January 2004, Branch alleges that he never received a single payment related to NOI or a financial statement indicating whether he was entitled to NOI. Branch further asserts that he obtained Chamisa's 2003 tax returns and, although he never received a payment in 2003, those returns demonstrate that NOI from the development was roughly two million dollars.

2

**{6}** According to Chamisa, the deterioration of the business relationship between July 1999 and January 2004 was entirely attributable to Branch. Chamisa contends that Branch failed to secure commercial tenants for the development; was violating a non-compete clause in the 1996 Agreement by acting as the leasing agent in a neighboring commercial development; complained to Chamisa, through his attorney, that he was being denied payments and information which Chamisa insists he was not entitled to; and threatened legal action against Chamisa unless such payments were issued.

**Settlement**

**{7}** In January 2004, Branch and Chamisa entered into a second agreement (Settlement Agreement) to terminate their business relationship. Branch was represented by counsel throughout the negotiations leading up to that agreement. The Settlement Agreement includes the following release:

> Branch hereby releases and forever discharges Chamisa, and its respective heirs, successors and assigns from any and all claims, known or unknown, at law or in equity, and of any kind or nature whatsoever, that Branch has or may have as of the date of this [Settlement] Agreement or after the date of this [Settlement] Agreement, arising from or relating to the [t]ransactions.

The term "transactions" is immediately thereafter defined as including several liabilities Branch owed to Chamisa, the 1996 Agreement, and a certain agreement dated August 15, 2001.

**{8}** As consideration for entering into the Settlement Agreement, Branch was paid an immediate cash sum of $515,000 and certain monetary liabilities he owed to Chamisa were forgiven. In total, the consideration Branch received pursuant to the Settlement Agreement amounted to $934,473.06.

**Proceedings in District Court**

**{9}** Branch filed his complaint and amended complaint on March 28, 2006, and January 16, 2007, respectively. These pleadings included six counts: (1) breach of fiduciary duty, (2) fraudulent concealment, (3) fraudulent misrepresentation, (4) negligent nondisclosure, (5) rescission, and (6) breach of contract. The relief Branch sought included, the difference between the consideration he received pursuant to the Settlement Agreement and the actual value of his ten percent equity interest in Plaza Santa Fe, any additional amounts owed to him pursuant to the 1996 Agreement, punitive damages, and his attorney fees and costs associated with the litigation.

**{10}** Branch's recission claim is premised on his assertion that he was induced by fraud to enter into the Settlement Agreement. According to Branch, Chamisa fraudulently represented to Branch that the value of Plaza Santa Fe was diminished because it was subject to a ground lease. Furthermore, he argues that Chamisa failed to inform him during the

3

settlement negotiations that it had entered into negotiations with a third party to sell Plaza Santa Fe. Most critically, according to Branch, Chamisa failed to disclose during those negotiations that the third party was offering to purchase Plaza Santa Fe for a sum significantly higher than the amount Chamisa represented to Branch that Plaza Santa Fe was worth. Had Branch been apprised of this information, he asserted that he would not have agreed to the Settlement Agreement. This is so because, had Chamisa accepted the third party's offer, Branch would have received a greater amount of money pursuant to his ten percent equity interest than what he received under the Settlement Agreement.

**{11}** These same facts together with Branch's allegations that Chamisa had consistently withheld information concerning the NOI, formed the basis of Branch's claims for fraudulent concealment, negligent nondisclosure, and fraudulent misrepresentation. The breach of contract claim is based on Chamisa's alleged failure to provide Branch payments under the 1996 Agreement. Finally, Branch's claim for breach of fiduciary duty stems from his assertion that Chamisa had a duty to disclose the information concerning the purchase offer Chamisa received for Plaza Santa Fe during the negotiations leading up to the Settlement Agreement.

**{12}** Shortly after Branch filed his amended complaint, Chamisa filed a motion for judgment on the pleadings or in the alternative for summary judgment. Chamisa argued that Branch was not entitled to rescission of the Settlement Agreement because he had not returned the consideration he received for entering into it. As he was not entitled to rescission, Chamisa further asserted that Branch was barred from asserting the remainder of his claims because he was bound by the Settlement Agreement.

**{13}** At a hearing on May 1, 2007, the district court ruled on Chamisa's motion. The district court found that to the extent Branch was seeking rescission of the Settlement Agreement, Branch was required to tender back the consideration he received before rescission was an available remedy. With respect to the remainder of Branch's claims, the district court found that the record was not sufficiently developed to rule either way on Chamisa's motion. Accordingly, the district court provided Branch with an opportunity to return the consideration he received under the Settlement Agreement within fifteen days of the district court's order.

**{14}** Branch did not return the consideration within the fifteen days. Chamisa then filed a memorandum in support of its motion for summary judgment. Chamisa's primary argument was that, having signed the Settlement Agreement and having failed to rescind that agreement, Branch's fraud claims and breach of contract claim were barred by the Settlement Agreement. Additionally, Chamisa asserted that it had no duty to disclose to Branch the fact that it received a purchase offer for Plaza Santa Fe—the foundation of Branch's fraud and breach of fiduciary duty claims—and cited two specific reasons in support of this assertion: (1) Chamisa and Branch were merely "arm['s-]length parties to a commercial contract"; and (2) Branch and Chamisa's contractual relationship was created by the 1996 Agreement and that agreement specifically disclaimed the existence of a partnership or joint venture. Finally, Chamisa asserted that even if it was under a duty to disclose to Branch the information concerning the purchase offer it received, the information Branch received

4

concerning the value of Plaza Santa Fe was accurate and there was no damage resulting from the non-disclosure.

**The District Court's Summary Judgment Ruling**

{15}     After a hearing on December 12, 2007, the district court granted Chamisa's motion for summary judgment.  The district court's decision, based on the undisputed facts, was premised on three conclusions.  First, the district court held that a tender back was required in order to rescind the Settlement Agreement, and Branch's failure to do so "bars the claim that is brought here."  Second, the district court further resolved that "I don't believe really in this circumstance Mr. Branch should be in a position, where [Chamisa] released any and all claims, known and unknown, and yet he goes forward with a claim based upon information that was not disclosed."  Finally, the district court concluded that Chamisa was under no duty to disclose to Branch the information cited by Branch as the basis for his fraud claims.  The district court explained that, at the time the parties entered into the Settlement Agreement, "there's an ongoing disagreement or business dispute between the parties, therefore, in my view, the law did not require a duty to disclose information such as an opportunity to sell the property in the near future."

{16}     Immediately after the district court rendered its decision, Branch requested that he be given another opportunity to tender back the consideration received from Chamisa pursuant to Settlement Agreement.  The district court denied that request.  The court's rulings were memorialized by written orders that were filed on January 2, 2008.

**Reconsideration**

{17}     Branch subsequently filed a motion requesting that the district court reconsider its order granting Chamisa's motion for summary judgment.  At a hearing on January 31, 2008, the district court denied that motion.  The district court found that the tender back was a condition precedent to rescission, that rescission was the only option available to Branch considering that he was alleging that the Settlement Agreement was procured by fraud, that the scope of the Settlement Agreement encompassed the claims Branch asserted thus precluding them, and that Chamisa was under no duty to disclose the information Branch cited as the foundation for his fraud claims.

**II.     DISCUSSION**

{18}     On appeal, Branch makes three arguments.  First, he contends that his failure to tender back consideration does not bar his claims for fraudulent inducement, fraudulent concealment or rescission.  Second, Branch argues that his claims for fraudulent inducement into the Settlement Agreement were not released.  Finally, Branch claims that "[t]he duty to disclose material facts is not relieved by the existence of an 'adversarial' relationship."  We begin with the standard of review and then we will address each argument in turn.

**Standard of Review**

**{19}**     A district court's grant of summary judgment is reviewed de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.  "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Roth v. Thompson*, 113 N.M. 331, 335, 825 P.2d 1241, 1245 (1992).  A party moving "for summary judgment need only make a prima facie showing that there is no genuine issue of material fact, and that on the undisputed material facts, judgment is appropriate as a matter of law[.]" *Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 7, 122 N.M. 537, 928 P.2d 263.  At that point, the burden shifts to the nonmoving party to demonstrate "at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Id.*  "Summary judgment may be proper even though some disputed issues remain, if there are sufficient undisputed facts to support a judgment and the disputed facts relate to immaterial issues." *Oschwald v. Christie*, 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980).  This Court "view[s] the facts in a light most favorable to the party opposing the motion and draw[s] all reasonable inferences in support of a trial on the merits[.]" *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879.

**The Rescission Claim**

**{20}**     The district court found that Branch's failure to tender back the consideration he received for entering into the Settlement Agreement barred his rescission claim.  We see no error in this ruling.  As we explain below, Branch is legally barred from rescinding the Settlement Agreement.

**{21}**     According to *Black's Law Dictionary* 1332 (8th ed. 2004), a "rescission" is defined as "[a] party's unilateral unmaking of a contract for a legally sufficient reason[.]" *Black's Law Dictionary* further explains that "[r]escission is generally available as a remedy or defense for a nondefaulting party and is accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions." *Id.*  Thus, rescission can be described as an equitable remedy that results in the cancellation of a contract entered into through mistake, fraud, or duress.  As we explain, existing precedent in New Mexico establishes that Branch forfeited his right to rescind the contract by retaining the consideration he received under the Settlement Agreement.

**{22}**     We begin our analysis by recognizing that New Mexico adheres to the election of remedies doctrine. *See Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 693, 652 P.2d 240, 243 (1982), *overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. 57, 728 P.2d 467 (1986).  In *Three Rivers Land Co.*, our Supreme Court explained the import of this doctrine in the following manner:

> where two inconsistent or alternative rights or claims are presented to the choice of a party, by a person who manifests the clear intention that he should not enjoy both, then he must accept or reject one or the other; and so, in other words, that one cannot take a benefit under an instrument and then repudiate it.

98 N.M. at 693, 652 P.2d at 243 (quoting *Peters v. Bain*, 133 U.S. 670, 695 (1890) (internal quotation marks omitted)).

{23}     In *Putney v. Schmidt*, 16 N.M. 400, 411, 120 P. 720, 723 (1911), our Supreme Court explained that a party seeking to rescind a contract on grounds of fraud after receiving valuable consideration must tender back that consideration before rescission will be permitted; to retain the consideration would be inconsistent with the remedy sought. The Court in *Putney* observed that

> where a party received something of value under a contract, if he seeks to rescind the same upon the ground of fraud, he must immediately, upon discovering the fraud, restore, or offer to restore, all that he has received under the contract, as a condition precedent to his right to rescind the same. If he fails to do this, or if, after discovering the fraud, he takes any steps in affirmance of the contract, he will be held to have elected to affirm the same and will not thereafter be granted relief in equity from the burdens of the contract.

*Id.* Although our Supreme Court made no explicit reference in *Putney* to the election of remedies doctrine, it seems clear that the above quote is but a restatement of the tenets of that doctrine: it is plainly inconsistent to permit a party seeking avoidance of a contract on grounds of fraud to retain the consideration received for entering into that contract which would have the effect of affirming that agreement.

{24}     In the present matter, there is no dispute that Branch retained the consideration he received (roughly one million dollars) for entering into the Settlement Agreement. By retaining that consideration, Branch elected to affirm the Settlement Agreement. *See id.* ("[I]f, after discovering . . . fraud, [a party] takes any steps in affirmance of the contract, he will be held to have elected to affirm [it]."); *see also Stewart v. Lucero*, 1996-NMSC-027, ¶ 18, 121 N.M. 722, 918 P.2d 1 (same); *Armijo v. Nuchols*, 57 N.M. 30, 35, 253 P.2d 317, 320 (1953) ("[I]f with full knowledge of facts entitling him to rescission, he ratifies the transaction, he is conclusively bound thereby."). Branch concedes that "a party who has ratified a contract cannot thereafter seek to rescind it." (Emphasis omitted.) We conclude that Branch's affirmation of the Settlement Agreement had just this effect.

{25}     Branch's argument on appeal that "there are no facts that would support a claim for ratification" and that "[t]here has been no ratification of the [Settlement Agreement]" is without merit. Declaring the Settlement Agreement affirmed is merely another way of stating, in this context, that the Settlement Agreement has been ratified. *See Black's Law Dictionary*, *supra*, 64 (8th ed. 2004) (defining "affirmance" as a "ratification, reacceptance, or confirmation"). *Black's* goes on to explain that "[a] party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as 'affirmance' and has the effect of ratifying the contract."

{26}     We are equally unpersuaded by Branch's assertions that the narrow exceptions to the tender-back rule articulated in *Woods v. City of Hobbs*, 75 N.M. 588, 408 P.2d 508 (1965),

7

and *Register v. Roberson Const. Co.*, 106 N.M. 243, 741 P.2d 1364 (1987), are applicable. In *Woods*, 75 N.M. at 589-90, 408 P.2d at 509-10, a worker sustained a work-place injury and agreed to release his employer from liability under workers' compensation after his employer agreed to pay him five thousand dollars and, according to the worker, promised to retain him as an employee. The worker was terminated immediately after he signed the release and subsequently brought suit to rescind it. *Id.* at 590, 408 P.2d at 510. The employer argued that the worker was not entitled to rescission as he had not tendered back the five thousand dollars. *Id.* at 591, 408 P.2d at 510. Our Supreme Court rejected the employer's argument noting that the five thousand dollars had been credited to the employer for purposes of determining the employer's ultimate liability to the worker and held that failure to tender back will not preclude rescission "where it is only money paid, the amount of which can be credited in partial cancellation of the injured party's claim." *Id.* at 591, 408 P.2d at 511. As we subsequently explain, Branch's case is distinguishable from *Woods* for several reasons.

**{27}** First, in *Woods*, the employer's liability under the Workers' Compensation Act had already been proven. *Id.* at 590, 408 P.2d at 509. Thus, any settlement amount could be subtracted from the eventual judgment. Second, a rigid use of the tender-back rule is often difficult in the unique context of employment cases and the remedial statutes under which those cases are brought. *See Rangel v. El Paso Natural Gas Co.*, 996 F. Supp. 1093, 1097 (D.N.M. 1998) (stating that in cases involving the FELA, ADEA, or Title VII, an inflexible application of the tender-back rule would prevent the courts from determining the conditions under which a release has been obtained, contrary to Congress' purpose in passing such statutes). Finally, unlike the worker in *Woods*, the consideration Branch received under the Settlement Agreement included more than money. In addition to receiving roughly one million dollars, Branch also received Chamisa's forbearance of claims. Chamisa released Branch from claims it had that Branch allegedly violated the 1996 Agreement when he failed to perform his duties under the 1996 Agreement and elected to serve as the leasing agent for a competing commercial development. This forebearance on Chamisa's behalf constituted the furnishing of consideration to Branch. *See* 3 Richard A. Lord, *Williston On Contracts* § 7:46, at 830 (4th ed. 2008) ("Forebearance to prosecute . . . a suit or other action which has been or may be instituted is generally held to be sufficient consideration without inquiring whether the suit . . . would have been successful or not."). Thus, the exception to the general rule that a tender back must be made before a rescission of a contract can be accomplished as articulated in *Woods* is inapplicable in the present matter.

**{28}** In *Register*, 106 N.M. at 244-45, 741 P.2d at 1365-66, a couple who purchased a home brought a fraud suit against the developer of the subdivision where the home was located, claiming that the developer had engaged in deceptive practices to entice them to make the purchase. The homeowners sought to relinquish ownership of the home (relinquishing it to the developer) by rescinding the contract under which the home was purchased. *Id.* at 245, 741 P.2d at 1367. The developer argued that rescission was not a remedy available to the homeowners as they had not tendered back the home. *Id.* Our Supreme Court rejected this argument, observing that it was impossible for the homeowners to relinquish ownership of the home to the developer because the home had been encumbered with a mortgage and the developer lacked the financial resources to repurchase

8

the home from the homeowners. *Id.* The facts underlying Branch's case do not remotely resemble the facts in *Register*.

**{29}** Unlike the homeowners in *Register*, Branch did not argue to the district court and does not claim on appeal that it was impossible for him to return the consideration he received for entering into the Settlement Agreement, which might have excused his failure to tender back. Instead, Branch makes the conclusory statement that "Chamisa could not have returned . . . [Branch's ten percent] equity stake" as grounds for concluding that tender back was impossible. This argument assumes that both parties to a contract are required to return the consideration paid. A party's "right to rescind," however, appears to rely on his willingness to "restore, or offer to restore, all that he has received under the contract." *Putney*, 16 N.M. at 411, 120 P. at 723. Branch made no effort to tender back the settlement payment, although he was given the opportunity to do so by the district court. Therefore, regardless of Chamisa's ability to tender back what it received as the benefit of the Settlement Agreement, Branch did not satisfy the "condition precedent" to assert his right to rescind the contract. *Id.*

**{30}** Based on the preceding analysis, the district court properly granted summary judgment against Branch with respect to his claim for rescission.

## The Breach of Contract Claim

**{31}** Branch contends that the district court erred by granting summary judgment on his breach of contract claim. We disagree. As we held above, Branch's failure to tender back to Chamisa the payment he received rendered his attempted repudiation of the Settlement Agreement ineffective and the Settlement Agreement is, therefore, binding upon him. Branch's breach of contract claim is based not on the Settlement Agreement but on alleged violations of the 1996 Agreement. Because the Settlement Agreement specifically encompassed claims relating to the 1996 Agreement, and because the Settlement Agreement remains in force, Branch cannot sue for breach of the 1996 Agreement. *See National Old Line Ins. Co. v. Brown*, 107 N.M. 482, 484, 760 P.2d 775, 777 (1988) (once there is an accord and satisfaction, the previously existing claim is extinguished). We hold that the district court's grant of summary judgment with regard to Branch's claim for breach of contract was proper.

## The Fraud Claims

**{32}** In light of the fact that the Settlement Agreement remains in force, the district court next found that the broad language of the release in the Settlement Agreement barred Branch's fraud claims. The district court supported this conclusion with its observation that the plain language of the release and the context within which Branch and Chamisa entered into the Settlement Agreement demonstrated that Branch intended to release Chamisa from the type of fraud claims contained in the complaint. Accordingly, the district court granted summary judgment against Branch with respect to those claims. While we generally agree with Branch that a claim of fraudulent inducement may be available to one who executes a release of claims, we agree with the district court that the undisputed evidence in this case

9

shows that the lack of information on which Branch premised his claims of fraudulent concealment, fraudulent misrepresentation, and negligent nondisclosure was the same general lack of information that formed the basis of the dispute and was therefore a claim released by the Settlement Agreement. Accordingly, we agree with the ruling of the district court.

**{33}** "[A] settlement agreement is a species of contract[.]" *Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 2006-NMCA-053, ¶ 8, 139 N.M. 508, 134 P.3d 795. New Mexico adheres to "the contextual approach to contract interpretation, in recognition of the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (internal quotation marks and citation omitted). Thus, we are not "restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the party's words are ambiguous." *Id.*

**{34}** In the present circumstance, we are of the opinion that the terms of the release are clear and based on the undisputed facts of this case, can be interpreted in only one way: the terms plainly encompass the fraud claims asserted by Branch in his complaint. *See C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509-10, 817 P.2d 238, 243-44 (1991) (holding that where only one interpretation of contractual terms is possible, a court may decide the meaning of those terms as a matter of law). We note first that the Settlement Agreement, which came about as the result of significant negotiations, included a broad release "from any and all claims known or unknown, at law or in equity, and of any kind or nature whatsoever, that Branch has or may have . . . ." This clear and unambiguous language, drafted by experienced commercial real estate investors and their attorneys, contains no exclusions or reservations whatsoever.

**{35}** Moreover, as the district court found based on the undisputed facts, the context within which the Settlement Agreement was reached is further evidence that Branch intended to release Chamisa from claims for fraud. *Concerned Residents of Sante Fe North, Inc. v. Santa Fe Estates, Inc.*, 2008-NMCA-042, ¶ 51, 143 N.M. 811, 182 P.3d 794 (holding that "[t]he court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear" and "[i]f the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law"). This Court may look "outside the simple terms of a settlement agreement to determine the nature of the transaction and scope of the intent of the parties." *Gutierrez v. Sundancer Indian Jewelry, Inc.*, 117 N.M. 41, 44, 868 P.2d 1266, 1269 (Ct. App. 1993).

**{36}** Branch asserts that "Chamisa provided no evidence that claims for fraud in the inducement of the [Settlement Agreement] were contemplated by the parties, nor any evidence that the parties intended to release such claims." Branch contends that at the time he entered into the Settlement Agreement (and agreed to the release), he "did not know" that Chamisa was being dishonest about NOI; that Plaza Santa Fe was not subject to a ground lease as Chamisa claimed it was; and that the value of Plaza Santa Fe was greater than what

10

Chamisa claimed as evidenced by the third-party purchase offer. This lack of information, Branch claims, creates factual disputes precluding summary judgment. We disagree.

{37} The record does not support Branch's assertions that he "did not know" he was being deceived. Rather, the undisputed facts in the record indicate that Branch knew Chamisa's representations were questionable and his knowledge about these facts imperfect and yet he went ahead with settlement anyway. Branch made the following conclusive statements during the course of his deposition. First, Branch testified that during the negotiations leading up to the Settlement Agreement, and during which time both parties were represented by counsel, he was aware that he lacked information concerning whether he was entitled to payments related to NOI generated from Plaza Santa Fe. Second, when approached by Chamisa with the possibility of Settlement, Branch—in his capacity as an experienced commercial real estate broker—formulated a proposed valuation of Plaza Santa Fe. That valuation greatly exceeded the value Chamisa claimed the property was worth. Chamisa cited the fact that the property was "on a ground lease" as grounds to reject Branch's valuation, but Branch testified that he did not believe this explanation. Third, Branch acknowledged and expressly admitted that the dispute over the value of Plaza Santa Fe was an integral part of the negotiations. Finally, Branch admitted that he had contemplated bringing suit against Chamisa to obtain his portion of the NOI and an accurate valuation of Plaza Santa Fe. He conceded that he was not prevented by Chamisa, or any other party, from bringing such a suit. He stated that he merely wished to avoid "everything that comes with" the filing of a lawsuit and rather than trying to find out all the facts, he elected to go forward with the settlement.

{38} These undisputed material facts demonstrate that Branch suspected that Chamisa was misrepresenting information, knew he had not received full disclosure from Chamisa, and yet he decided to settle and release Chamisa from any and all claims. In other words, Branch's own testimony demonstrates that he was releasing Chamisa from the fraud claims he now asserts are brought as a result of undisclosed information. Accordingly, we hold that the district court did not err when it concluded that the Settlement Agreement was arrived at as a result of arm's-length bargaining in an adversarial context and that by executing that agreement, Branch knew he was releasing Chamisa from any fraud claims he might possess.

{39} Based on the foregoing discussion, we hold that Branch's fraud claims are precluded as a matter of law. Accordingly, we need not evaluate the district court's finding that the adversarial relationship of the parties diminished the duty, if any, Chamisa owed to Branch thus negating the factual underpinnings of Branch's fraud claims. *See Moffat v. Branch*, 2002-NMCA-067, ¶ 13, 132 N.M. 412, 49 P.3d 673 ("[W]e [may] affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant.").

**The Breach of Fiduciary Duty Claim**

{40} Finally, Branch contends that the district court erroneously dismissed his claim for breach of fiduciary duty. Specifically, Branch claims that the district court erred because its ruling was contrary to law and because "there are genuine issues of material fact regarding whether certain facts known to Chamisa were material, and would have given rise to a duty

11

on Chamisa's part to disclose these facts." We disagree. "[A] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." *Moody v. Stribling*, 1999-NMCA-094, ¶ 18, 127 N.M. 630, 985 P.2d 1210 (internal quotation marks and citation omitted). Our assessment of whether a fiduciary duty exists between two parties turns on "whether the relationship between the parties is one of trust and confidence." *Id.* ¶ 17.

{41} The 1996 Agreement specifically disclaimed any partnership or joint venture between Branch and Chamisa. Accordingly, Branch and Chamisa were merely parties to an arm's-length commercial transaction when they entered into the Settlement Agreement. As such, Branch's claim for breach of a fiduciary duty cannot stand. As arm's-length parties to a transaction—with each party protecting its own interests—Chamisa was not under a fiduciary duty to disclose information to Branch. *See Walta v. Gallegos Law Firm, P.C.*, 2002-NMCA-015, ¶ 40, 131 N.M. 544, 40 P.3d 449 ("[I]t seems self-evident that a fiduciary duty is inconsistent with standards of conduct typically at play in arm's-length commercial or business transactions."). Because Branch has failed to produce evidence sufficient to raise a genuine issue of material fact as to the existence of a fiduciary relationship between himself and Chamisa, we affirm the district court's ruling granting summary judgment on Branch's claim for breach of fiduciary duty.

## III.    CONCLUSION

{42} We affirm the district court's orders granting summary judgment to Chamisa.

{43}    **IT IS SO ORDERED.**


                                                    _____
                                                    **LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**CELIA FOY CASTILLO, Judge**

**Topic Index for *Branch v. Chamisa Develop. Corp., Ltd.*, No. 28,367**

**AL**          **ADMINISTRATIVE LAW AND PROCEDURE**
AE-JR          Judicial Review

**CP**          **CIVIL PROCEDURE**

CP-DS  Dismissal
CP-SE  Settlement Agreement

**CN**   **CONTRACTS**
CN-FR  Fraud, Duress, or Mistake
CN-RS  Rescission
CN-TN  Tender

**RE**   **REMEDIES**
RE-ER  Election of Remedy

**TR**   **TORTS**
TR-FR  Fraud